**SO ORDERED.**

**SIGNED this 17 day of October, 2011.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:

| | |
|---|---|
| GILBERT VAUGHN | CHAPTER 13 |
| CORLETTA J. VAUGHN | CASE NO. 09-08038-8-RDD |
| DEBTORS | |

**ORDER OVERRULING OBJECTION TO CLAIM**

Pending before the Court is the Objection to Claim and Notice Thereof, filed by Gilbert Vaughn and Corletta J. Vaughn (the "Debtors") on December 15, 2009 (the "Objection) and the Response to Debtors' Objection to Proof of Claim of the Internal Revenue Service, filed by the Internal Revenue Service (the "IRS") on January 22, 2010.  The Court gave the parties the opportunity to submit formal briefs.  The Debtor filed a brief and the IRS filed a responsive brief.  The Court conducted a hearing on July 27, 2011, at the conclusion of which the Court continued the hearing until October 17, 2011 and requested that the Debtors and the IRS provide post-hearing briefs.  Both parties filed post-hearing briefs.

**BACKGROUND**

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on

September 17, 2009. On October 20, 2009, the IRS filed their original proof of claim, Claim No. 6-1, in the amount of $111,645.48. That claim has since been amended four times. On April 21, 2010, the IRS filed their most recent amended proof of claim, Claim No. 6-4 (the "Claim") in the amount of $88,475.17, for civil penalties related to unpaid employment taxes and for income tax liabilities pursuant to 26 U.S.C. § 6672, the Trust Fund Recovery Penalty (the "TFRP"). The Debtors objected to the Claim on December 15, 2009, asserting that Corletta J. Vaughn ("Ms. Vaughn") was not a responsible party pursuant to 26 U.S.C. § 6672(a) during the relevant time periods and that the TFRP was improperly assessed.

Go Tell It Evangelistic Ministry ("GTI") failed to remit to the United States payroll taxes for the quarters ending June 30, 2002, September 30, 2002, December 31, 2002, March 31, 2003, June 30, 2003, September 30, 2003, December 31, 2003, and March 31, 2004.

Ms. Vaughn founded GTI. GTI was incorporated in 1984 and is located in Detroit, Michigan. GTI is a 26 U.S.C. § 501(c)(3) organization and has no stockholders or owners. GTI was an umbrella entity that had oversight of five different divisions: (1) the Holy Ghost Full Gospel Church (the "Holy Ghost Church"); (2) Go Tell It Evangelistic Ministry; (3) Go Tell It Network; (4) Spread the Word Media; and (5) KFBC School. Ms. Vaughn was actively involved in all five of the divisions and was considered the "face" or spokesperson of GTI.

Ms. Vaughn's father founded the Holy Ghost Missionary Baptist Church in 1972. The Holy Ghost Church is a church that holds services twice a week. Ms. Vaughn became an associate minister of the Holy Ghost Church and her father trained her. Ms. Vaughn's father passed away in 1993. Ms. Vaughn became the Senior Pastor of the Holy Ghost Church. Over time, Ms. Vaughn created the five divisions of GTI as outreach ministries. The five divisions kept separate monetary

accounts and forwarded funds to GTI to cover expenses. At all relevant times, GTI's officers were Ms. Vaughn, the President, CEO and Chief Apostle, Gilbert Vaughn, the Chief Financial Officer and Ruth Sinclair, the Comptroller.

The GTI Bylaws provide that the Chief Apostle shall act "as CEO over all spiritual and business matters." Additionally, the bylaws provide that the Chief Apostle shall be the "Chief Executive Officer of the said organization and shall be a continuing member of all boards and committees." The Chief Apostle "shall be an ex-officio member of all standing committees, and shall have the general powers and duties of supervision and management usually vested in the office of president of a corporation." The Holy Ghost Church Bylaws provide that the "Senior Pastor shall have general management of the affairs of the church and general supervision of the other officers." The Senior Pastor shall be "an ex-officio member of all standing committees, and shall have the general powers and duties of supervison [sic] and management usually vested in the office of president of a corporation." The Senior Pastor "shall be designated attorney-in-fact for the Church by virtue of his office."

In 1999, Ruth Adams ("Ms. Adams") was appointed as GTI's Fiscal Administrator. Prior to her appointment as Fiscal Administrator, Ms. Adams was a Trustee and Elder of the Holy Ghost Church. She was also involved in the accounting and financial duties of GTI as a volunteer. In 1999, Ms. Adams discovered there was a problem with payroll tax accounting and payments with respect to GTI. It became apparent that the hired employee responsible for payroll had not been remitting the proper amount of employment taxes to the United States. Ms. Adams made Ms. Vaughn aware that the employment taxes were not being paid. In response, Ms. Vaughn created the Fiscal Affairs Department and the Fiscal Administrator position. The Fiscal Affairs Department and

the Fiscal Administrator consolidated the accounting and financial functions of the five different divisions under one department. Ms. Adams was to oversee the payroll and accounting functions of GTI and eventually pay off any outstanding tax liabilities. In 2000, GTI entered into a payment Plan with the IRS, regarding GTI's failure to remit employment taxes for the quarter ending March 31, 2002. These quarter payments were paid off in November 2002. Although, GTI paid off the amount owed for the quarter ending March 31, 2002, it failed to pay employment taxes for the second, third and fourth quarters of 2002 and the first and second quarter of 2003.

The Form 941s[1] filed by Ms. Adams for the quarters ending June 30, 2002 through June 30, 2003 showed significant unpaid taxes and little to no payments for any of the quarters.

Ms. Vaughn regularly traveled the country doing speaking engagements for GTI's outreach ministires. On January 6, 2003, Ms. Vaughn's husband became ill. In April, 2003, Ms. Vaughn and her husband moved to North Carolina. In May 2003, Ms. Vaughn resigned as Senior Pastor and began caring for her husband. Throughout this period, Ms. Vaughn remained the CEO and President of GTI.

In June 2003, Ms. Vaughn returned to Michigan to deal with GTI's significant financial difficulties. During this visit, Ms. Vaughn sent an inter-office memorandum directing that "no disbursements to vendors or to staff are to be made until further notice except to Pastor Clifton Jefferson and myself, effective immediately." As a result, many of GTI's employees, including Ms. Adams resigned.

---

[1]Trust fund taxes "are accounted for by the IRS on a quarterly basis through the use of a tax return form known as 'Form 941.' Employers must filed Form 941 within one month from the end of the prior quarter, and penalties are assessed for late filings." *Farkas v. United States*, 57 Fed. Cl. 134, 139 (2003).

4

**STATEMENT OF THE CASE**

The Debtors argue that Ms. Vaughn should have no personal responsibility for the claim because Ms. Vaughn was not a responsible person pursuant to 26 U.S.C. § 6672(a). Furthermore, if the responsible person designation is found, the Debtors argue that Ms. Vaughn did not act willfully pursuant to 26 U.S.C. § 6672(a). The Debtors contend that Ms. Vaughn assigned the duty and responsibility of tax related obligations of GTI to Ms. Adams, the Fiscal Administrator for five of the eight quarters at issue in this case and therefore, Ms. Vaughn is not personally liable. Additionally, the Debtors argue that the TFRP was improperly assessed against Ms. Vaughn because she was denied an administrative appeal of the IRS assessment.

In support of its claim, the IRS argues that the Debtors have failed to prove by a preponderance of the evidence that Ms. Vaughn was not a responsible person pursuant to 26 U.S.C. 6672(a). The IRS argues that Ms. Vaughn acted wilfully because she had actual knowledge of the unpaid Trust fund taxes and paid other creditors in preference to the United States. Additionally, the IRS contends that Ms. Vaughn's conduct should be considered willfull because she recklessly disregarded a risk that the taxes might not be paid; and after admitting to actual knowledge of the unpaid taxes, Ms. Vaughn failed to use all available funds to then pay the outstanding tax liability. As to the Debtors' contention that the TFRP was improperly assessed, the IRS contends that the IRS is not required to provide a taxpayer with an appeal of a determination of TFRP liability.

The Court conducted a hearing on July 27, 2011 and a telephonic hearing on October 17, 2011. At the conclusion of the July 27, 2011 hearing, the Court continued the hearing until October 17, 2011 and ruled that in order to more efficiently proceed at the October 17, 2011 hearing: (1) the debtors are required to submit the corporate bylaws of both the GTI Ministry Worldwide and The

Holy Ghost Full Gospel Church on or before August 3, 2011 at 5:00 p.m.; and (2) the Internal Revenue Service is required to generate a bill or invoice issued to Go Tell It Ministry Worldwide, representing the taxes and penalties assessed against Corletta J. Vaughn as a "responsible officer" of Go Tell It Evangelistic Ministry Worldwide on or before August 3, 2011 at 5:00 p.m. The Internal Revenue Service shall deliver the invoice to Go Tell It Ministry Worldwide at 1745 E. Grand Blvd., Detroit, Michigan 48211 and at any other address on file with the Internal Revenue Service, and to Joseph Falcone, attorney at law, at 3000 Town Center, Suite 2370, Southfield, Michigan 48075. The parties complied with these requirements.

## DISCUSSION

### A. Burden of Proof

The Debtors have the burden of disproving trust fund assessment liability by a preponderance of the evidence. *In re Thorne*, No. 09-04515-8-SWH, 2011 WL 1118487, at *2 (Bankr. E.D.N.C. Mar. 24, 2011). Generally, when the debtor has properly objected to the claimant's proof of claim, the claimant has the burden of proof pursuant to 11 U.S.C. § 502. *Id.* In a tax claim matter, however, "the taxpayer has the 'burden of proving the government's assessment wrong by a preponderance of the evidence.'" *Id.* (citing *United States v. Pomponio*, 635 F.2d 293, 297 n. 4 (4th Cir. 1980)).

### B. 26 U.S.C. §6672(a)

Federal law requires employers to withhold federal income taxes and social security taxes from employee wages and remit those taxes to the United States. 26 U.S.C. §§ 3102, 3402, 7501. The employer holds these taxes in trust for the United States. *See Slodov v. United States*, 436 U.S. 238, 243 (1978). These taxes are often referred to as "trust fund taxes." *Id.* The United States has

no recourse against individual employees. Therefore, an employer who fails to remit the withheld taxes to the United States, is liable for the taxes which should have been paid. 26 U.S.C. § 6672(a).

> Section 6672(a) provides:
>
> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall . . . be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

Although, the employer will remain liable for the unpaid payroll taxes, its officers and agents may incur personal liability for the unpaid payroll taxes. *O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir. 1992). In order for an individual to be held personally liable under § 6672: "(1) the party assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to as a 'responsible person'; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid." *Id.* at 50 (citing *United States v. Pomponio*, 635 F.2d 293 (4th Cir. 1980)).

## C. Responsible Person

The question of who within the company is a "responsible person" required to collect, truthfully account for and pay the payroll taxes to the United States, is a "pragmatic, substance-over-form inquiry into whether an officer or employee so 'participate[d] in decisions concerning payment of creditors and disbursement of funds' that he effectively had the authority-and hence a duty-to ensure payment of the corporation's payroll taxes." *Plett v. United States*, 185 F.3d 216, 219 (4th Cir. 1999) (citing, *O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir. 1992)). In other words, the "crucial inquiry is whether the person had the effective power to pay the taxes-that is, whether he

7

had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." *Id.* (citation and internal quotation omitted). An individual "cannot avoid the duty to assure that withholding taxes are paid to the government simply by delegating the responsibility to pay those taxes to a subordinate." *Johnson v. United States*, 203 F.Supp. 2d 416, 423 (D. Md. 2002) (citation and internal quotation omitted).

When making the determination of who is a "responsible person", courts have considered several factors which are indicative of this authority including whether the employee: (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees. *Plett,* 185 F.3d at 219.

No single factor is controlling or dispositive and every factor need not be present in order to determine an individual is a "responsible person." *See Erwin v. United States*, 591 F.3d 313, 321 (4th Cir. 2010); *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir. 1990) (finding that even though the plaintiff was not a company officer or director and had no authority to hire or fire, he was a "responsible person").

Liability under Section 6672 "applies to all responsible persons, and not just the *most responsible* person." *Hagen v. United States*, 485 F. Supp. 2d 622, 628 (D. Md. 2007) (emphasis in original) (citing *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir. 1991)). Accordingly, there may be multiple responsible persons within the corporation. Liability attaches if the individual could have exercised his authority to ensure payment of the taxes. *Muck v. United States*, 3 F.3d 1378, 1381 (10th Cir. 1993).

The Court finds that the Debtors have failed to carry their burden of disproving that Ms. Vaughn was a "responsible person" under Section 6672. Ms. Vaughn was CEO and President of GTI during the periods at issue and possessed decisionmaking authority over GTI's finances. Even after she resigned as Pastor and Board Member of the Holy Ghost Church, she remained CEO and President of GTI. Additionally, Ms. Vaughn continued receiving a salary from GTI, even after she moved to North Carolina to care for her husband. According to Schedule I, Ms. Vaughn's estimated average monthly income at the time the case was filed was $11,800.00.

At the hearing, Ms. Vaughn testified that she was the spiritual head of the organization, and therefore she was prohibited from participating in the financial management of GTI. GTI's bylaws, however, provide for Ms. Vaughn's decisionmaking authority over the business matters of GTI. The bylaws provide that Chief Apostle Vaughn shall act as CEO over all spiritual and *business* matters. (emphasis added). Additionally, the bylaws provide that the Chief Apostle shall be the CEO of GTI and shall be a continuing member of all boards and committees. The Chief Apostle shall preside at all meetings if present, of the Board of Governors and the Board of Presbytery and shall see that all orders and resolutions of the Boards are carried into effect. Further, the bylaws provide that the Chief Apostle "shall execute in the name of the Church all deeds, bonds, mortgages, contracts, and other documents authorized by the Board of Governors" and shall have the general powers and duties of supervision and management usually vested in the office of president of a corporation." The terms of the bylaws, provide for Ms. Vaughn's decisionmaking authority and authorize her to supervise the business matters of GTI.

Ms. Vaughn testified that the Board of Trustees, along with the Fiscal Administrator managed and oversaw the fiscal accounts, savings and checking, receipts and disbursements. Based

on this, the Debtors contend that as the CEO, Ms. Vaughn was not expected to verify that payroll taxes were being paid, especially given the very specific and narrow function of the Fiscal Affairs Department. This however, does not absolve Ms. Vaughn from the "responsible person" designation because "[d]elegation [of authority] will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute." *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989) (quoting *Harrington v. United States*, 504 F.2d 1306, 1311 (1st Cir. 1974)). There may be multiple responsible persons within a corporation. Therefore, the delegation of authority to Ms. Adams does not absolve Ms. Vaughn from responsibility.

Ms. Vaughn's decisionmaking authority is further evidenced by her ability to co-sign loans as an officer on behalf of the corporation. For example, Ms. Vaughn co-signed a $178,000.00 construction loan from Bank One to GTI. The payments on this loan were made regularly.

Additionally, Ms. Vaughn had the authority to control payments made to vendors and staff. For example, in June 2003, when Ms. Vaughn discovered that GTI was facing significant financial difficulties, she sent an interoffice memorandum to Ruth Sinclair and Ms. Adams, the employees primarily responsible for financial activities, stating "[p]lease be advised that no disbursements to vendors or staff are to be made until further notice except to Pastor Clifton Jefferson and myself, effective immediately." This indicates Ms. Vaughn's actual authority, in that she was able to cease and end all disbursements to vendors and staff. It further indicates, she had supervision of the Fiscal Department, because the employees of the Fiscal Department followed her directives.

Ms. Vaughn possessed authority, and exercised that authority to sign checks on behalf of GTI. On August 5, 1998, Ms. Vaughn signed a corporate resolution as CEO and President of GTI authorizing a bank account with First Federal Bank of Michigan. This corporate resolution,

authorized Ms. Vaughn, to sign checks on behalf of GTI. Additionally, the corporate resolution gave Ms. Vaughn and her husband the authority to borrow funds from the bank accounts of GTI. Although Ms. Vaughn testified that she rarely wrote checks, because she didn't have access to the checks, "[t]he issue . . . is not how many checks [Ms. Vaughn] signed, but whether [she] had authority to do so." *Farkas v. United States*, 57 Fed. Cl. 134, 141 (2003) (citation omitted).

Additionally, Ms. Vaughn had the authority to hire and fire employees. For example, on October 24, 2004, Ms. Vaughn sent a letter to Mavis Brown-Kidd with the subject line of "Termination of Employment." The letter stated "due to a breech [sic] in the operating procedures of GTIMW standard employment requirements, I find it no longer appropriate for you to be in the employ of GTI Ministry Worldwide, Inc." Ms. Vaughn enclosed a check representing the employees net pay for the last pay period owed and payment for one week's work. The check was endorsed by Ms. Vaughn. At the hearing, Ms. Vaughn testified that she did not hire Ms. Adams, but rather the Board of Elders, which she presided over, voted to hire Ms. Adams. This testimony is in conflict with Ms. Vaughn's deposition testimony where she testified that she hired Ms. Adams "specifically to take care of payroll taxes."

On July 21, 2003, Ms. Vaughn sent an "Inner Office Staff Memorandum" to all employees of GTI and the Holy Ghost. The memorandum stated that "it has become impossible to disburse any monies to vendors or to staff. The following options are therefore presented to you: you may continue to work, with your pay placed in escrow to be disbursed when the financial environment has been corrected; or you may choose not to work as an unpaid leave . . . [p]lease advise me in writing of your decision by the end of the business day July 22, 2003." Upon receipt of this

11

memorandum many employees resigned, and submitted their resignation letters directly to Ms. Vaughn.

Throughout her testimony, Ms. Vaughn contended that her primary responsibilities rested with the spiritual nature of the church and not the business matters of the church. The documentary evidence however, presents a different picture. The documentary evidence clearly shows Ms. Vaughn had control over the business matters of GTI. The documentary evidence shows she exercised authority over matters such as check-signing, loan procurement and hiring and firing. The Fourth Circuit explained in *Lyon v. United States* the importance of documentary evidence when determining the issue of who controls the corporation:

> In this case, the critical question is whether someone like Lyon, who clearly controls the corporation on paper and who exercises authority over matters such as check-signing, loan procurement, and hiring and firing but who does so at the direction of others, is a "responsible person." The parties agree that Lyon was essentially a puppet of his father and that Lyon performed his duties as president and the sole director of North Branch at the direction of Henry Lyon. Clearly, the senior Lyon was running the show. But that is not necessarily enough to permit the younger Lyon to shirk his statutorily imposed duties to North Branch, particularly where he obtained benefits, exceeding $50,000, for assuming such responsibilities. This circuit's case law emphasizes that persons such as Lyon, with statutorily imposed duties for the financial operations of a corporation, are more often than not "responsible persons." We, along with other courts, look at whether or not the person in question has the power to compel or prohibit the allocation of corporate funds. Where persons have authority to sign a corporation's checks or to prevent their issuance by denying a needed signature or where persons control the voting stock of a corporation, they are generally held to be "responsible." Moreover, when a taxpayer claims, such as Lyon does, that he has only technical but not actual authority, *the taxpayer retains the burden of showing that actual authority was in reality more limited than technical authority, and if the individual fails to show a genuine dispute of material fact on the issue, we may conclude that the documentary evidence of authority reflects the reality.*

68 Fed. Appx. 461, 468 (4th Cir. 2003) (emphasis added) (internal citations and quotations omitted).

As in *Lyon*, here, Ms. Vaughn had the "power to compel or prohibit the allocation of corporate funds." *Id.* Although, Ms. Vaughn claims that she did not have actual authority, she retains the burden of showing that the "actual authority was in reality more limited than technical authority." *Id.* Because Ms. Vaughn has not carried this burden, the court may "conclude that the documentary evidence of authority reflects reality."*Id.*

At the hearing, the IRS presented deposition testimony of Ms. Adams, the Fiscal Administrator, to dispute Ms. Vaughn's claim that she did not participate in determining which creditors to pay. According to Ms. Adams, Ms. Vaughn attended weekly meetings with the Fiscal Department to discuss tax liabilities as well as other debts and determined the company's overall financial policies. She further testified that Ms. Vaughn determined which creditors to pay when there were not enough available funds to pay all of the creditors. The Debtors objected to this testimony, and argued that the testimony was not credible because of Ms. Adams' prior inconsistent statements. However, the evidence does show that Ms. Vaughn was involved with the company's finances.

Even excluding the testimony of Ms. Adams, the Debtors have failed to carry their burden of disproving Ms. Vaughn as a responsible party.

**D. Willfulness**

Finding that Ms. Vaughn is a responsible person does not end the inquiry. The Court must also find that Ms. Vaughn willfully failed to collect, truthfully account for or pay over the taxes. 26 U.S.C. § 6672(a). The Debtors contend that even if the responsible person designation is found, Ms. Vaughn did not act willfully pursuant to 26 U.S.C. § 6672(a). The Debtors argue that Ms. Vaughn did not have knowledge that the taxes were unpaid and that Ms. Adams did not make Ms.

13

Vaughn aware of her failure to remit the employment taxes for the quarters at issue. The IRS contends that Ms. Vaughn had actual knowledge of the unpaid taxes for all eight quarters at issue in this case and GTI continued to pay other creditors in lieu of the United States. Additionally, the IRS argues that Ms. Vaughn's conduct should be considered willfull because she recklessly disregarded a risk that the taxes might not be paid; and after admitting to actual knowledge of the unpaid taxes, Ms. Vaughn failed to use all available funds to then pay the outstanding tax liability.

26 U.S.C. § 6672(a) penalizes a person who "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof . . . ." 26 U.S.C. § 6672(a). The Fourth Circuit has held that willfulness can be established if a "responsible person": (1) has actual or constructive knowledge of the unpaid taxes and the employer continues to pay other creditors in lieu of the United States, *Plett*, 185 F.3d at 219; (2) lacks actual knowledge of the unpaid taxes, but "recklessly disregard[s] the existence of an unpaid deficiency," *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992) (citation omitted); and/or (3) becomes aware of the unpaid taxes and fails to use all unencumbered funds to pay the tax liability. *See Erwin*, 591 F.3d at 326 (4th Cir. 2010).

Courts have found reckless disregard when the person "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *In re Thorne*, No. 09-04515-8-SWH, 2011 WL 1118487, at *3 (quoting *United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994)). "[I]f a responsible officer knows that the corporation has recently committed such a [trust fund tax] delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding

14

account is, or to institute effective financial controls to guard against nonpayment." *Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987) (citations omitted).

Here, Ms. Vaughn testified that she had actual knowledge that GTI had failed to remit is employment taxes in the past and that she was aware GTI entered into an installment payment with the IRS. When asked about whether she had any recollection of the installment planned entered into with the IRS, Ms. Vaughn gave the following testimony on cross examination:

Tr. at 103:

> Q: Do you have any recollection of anyone discussing paying off this amount?
>
> A: Yes, sir.
>
> Q: And what's your recollection of that?
>
> A: Ruth Adams was at the church with tons of people and said she had good news. I said, great. And she made this booming announcement that the installment payment, I remember it, that the installment payment was now paid in full. And there was a great hoot that went through the whole building.

Tr. at 105:

> Q: Did you – when you found out about the installment plan for the period beforehand, did you ask any questions about the other taxes?
>
> A: . . . I do not know the exact dates of the periods that were represented in the installment. I just know that once there was an audit conducted, there were some abnormalities noted, and it was brought to my attention that at the time, among many other problems, that there were some payroll taxes that had not been paid.

Tr. at 106:

Q: So my question is were you aware that there was a tax issue in the late 90's which is when you –

A: Correct.

Ms. Vaughn testified that when she returned to Michigan in 2003 after discovering the financial difficulties of GTI, Ms. Adams informed her that GTI did not "have any money and everybody, every bill is due, everybody's owed."

Ms. Vaughn was on "notice" that the taxes were not being paid as early as 1999, but she failed to engage in any investigation to verify that the subsequent trust fund taxes were being paid. Failing to do so meets the "reckless disregard" test. This "notice" placed a duty on Ms. Vaughn to investigate and confirm that GTI was paying subsequent trust fund taxes. The Form 941s filed by Ms. Adams for the quarters ending June 30, 2002 through June 30, 2003 showed significant unpaid taxes and little to no payments for any of the quarters. Ms. Vaughn as CEO and President of GTI could have easily confirmed the outstanding liability.

The Debtors contend that Ms. Vaughn did not have knowledge of the tax liability and that she relied upon Ms. Adams to pay the taxes. Once Ms. Vaughn had knowledge that the trust fund taxes were not being paid, she could not delegate the responsibility to pay the taxes to Ms. Adams, without taking any additional steps to confirm their payment.

> [O]nce [the responsible person was] aware of the liability to the government, [he was] under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning.

*Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979).

As former President Harry S. Truman used to say, "the buck stops here." And so it did with Ms. Vaughn. She was President, CEO and Chief Apostle. The facts overwhelmingly demonstrate she willfully failed to collect, truthfully account for or pay over the taxes as a responsible person pursuant to 26 U.S.C. §6672(a).

### E. Administrative Appellate Rights

The Debtors contend that the IRS improperly assessed the trust fund taxes against Ms. Vaughn, because the IRS refused to hear her administrative appeal. As a result, the Debtors ask the Court to deny the IRS's claim. In response, the IRS argues that the Debtors contention is not founded in law and that no statute requires the IRS to provide an administrative appeal prior to assessing a TFRP against a taxpayer.

Here, the IRS issued a sixty (60) day notice to Ms. Vaughn on August 24, 2004. The IRS determined that the notice issued on August 24, 2004 required amending and on November 4, 2004, the IRS issued a second notice to Ms. Vaughn. On November 17, 2004, Ms. Vaughn filed a protest with the IRS dated October 27, 2004, referring to the first notice. This protest was made more than sixty (60) days after the August 24, 2004 notice it was protesting. Therefore, the IRS deemed the notice untimely under 26 U.S.C. § 6672(b). Despite, the IRS deeming the notice untimely, the IRS nevertheless considered Ms. Vaughn's protest.

On November 29, 2004, the IRS denied Ms. Vauhn's protest and referred it to the Service's Appeals Office for review. On February 7, 2006, the Appeals Office requested that Ms. Vaughn consent to extend the assessment period to permit the Appeals Office additional time to consider the appeal. Ms. Vaughn did not respond to this request and on February 23, 2006, the Appeals Office

Denied her appeal. On March 3, 2006, the Appeals Office informed Ms. Vaughn that her protest had been denied. On March 27, 2006, the Service assessed a TFRP against Ms. Vaughn.

>26 U.S.C. § 6672(b)(1)-(3) provides:
>
>(b) Preliminary notice requirement
>(1) In general No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty.
>(2) Timing of notice The mailing of the notice described in paragraph (1) (or, in the case of such a notice delivered in person, such delivery) shall precede any notice and demand of any penalty under subsection (a) by at least 60 days.
>(3) If a notice described in paragraph (1) with respect to any penalty is mailed or delivered in person before the expiration of the period provided by section 6501 for the assessment of such penalty (determined without regard to this paragraph), the period provided by such section for the assessment of such penalty shall not expire before the later of–
>(A) the date 90 days after the date on which such notice was mailed or delivered in person, or
>(B) if there is a timely protest of the proposed assessment, the date 30 days after the Secretary makes a final administrative determination with respect to such protest.

The Debtors allege that the first notice issued to Ms. Vaughn on August 24, 2004 was withdrawn and reissued on November 4, 2004. Therefore, Ms. Vaughn timely protested the notice, and the assessment period would not have expired until "30 days after the Secretary makes a final administrative determination with respect to such protest" pursuant to 26 U.S.C. § 6672(b)(1)(B).

The Court finds that even if the IRS did not follow its procedures, Ms. Vaughn has not been deprived of any procedural rights. Ms. Vaughn's remedy for the IRS's failure to follow its procedures, would be to have a hearing to challenge the assessment. This proceeding, has given Ms. Vaughn the opportunity to challenge the assessment through discovery, pre-trial and post-trial briefs and a formal hearing. Therefore, the Court holds that Ms. Vaughn is a responsible person who willfully failed to see that the trust fund taxes of GTI were paid. Ms. Vaughn is liable for the past-

due employment taxes plus interest and penalties in the amount of $85,814.69.[2]  The Debtors objection to claim is **OVERRULED**.

    **SO ORDERED**.

**END OF DOCUMENT**

---

[2]This amount was agreed to by stipulation of the parties in the joint pre-trial disclosures filed by the parties on July 20, 2011.