IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-222-FL

| | | |
|---|---|---|
| GILBERT VAUGHN and CORLETTA J. VAUGHN, | ) ) ) | |
| Appellants, | ) ) ) | |
| v. | ) ) ) | ORDER |
| INTERNAL REVENUE SERVICE, | ) ) ) | |
| Appellee. | ) | |

This matter is before the court on appeal from order of the United States Bankruptcy Court, dated October 17, 2011. Appellants filed notice of appeal in this court on December 23, 2011, pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure. The appeal has been fully briefed, and the matter is now ripe for decision. For the reasons that follow, the decision below is affirmed.

## BACKGROUND

Neither appellants nor appellee object to the bankruptcy court's recitation of the case background. As such, the court incorporates and adopts the same in pertinent part.

> On September 17, 2009, [appellants] filed petition for relief under Chapter 13 of the United States Bankruptcy Code. On October 20, 2009, the IRS filed their original proof of claim, Claim No. 6-1, in the amount of $111,645.48. That claim has since been amended four times. On April 21, 2010, the IRS filed their most recent amended proof of claim, Claim No. 6-4 (the "Claim") in the amount of $88,475.17, for civil penalties related to unpaid employment taxes and for income tax liabilities pursuant to 26 U.S.C. § 6672, the Trust Fund Recovery Penalty (the "TFRP"). [Appellants] objected to the Claim on December 15, 2009, asserting that Corletta J. Vaughn ("Ms. Vaughn") was not a responsible party pursuant to 26 U.S.C. § 6672(a) during the relevant time periods and that the TFRP was improperly assessed.

Go Tell It Evangelistic Ministry ("GTI") failed to remit to the United States payroll taxes for the quarters ending June 30, 2002, September 30, 2002, December 31, 2002, March 31, 2003, June 30, 2003, September 30, 2003, December 31, 2003, and March 31, 2004.

Ms. Vaughn founded GTI. GTI was incorporated in 1984 and is located in Detroit, Michigan. GTI is a 26 U.S.C. § 501(c)(3) organization and has no stockholders or owners. GTI was an umbrella entity that had oversight of five different divisions: (1) the Holy Ghost Full Gospel Church (the "Holy Ghost Church"); (2) Go Tell It Evangelistic Ministry; (3) Go Tell It Network; (4) Spread the Word Media; and (5) KFBC School. Ms. Vaughn was actively involved in all five of the divisions and was considered the "face" or spokesperson of GTI.

Ms. Vaughn's father founded the Holy Ghost Missionary Baptist Church in 1972. The Holy Ghost Church is a church that holds services twice a week. Ms. Vaughn became an associate minister of the Holy Ghost Church and her father trained her. Ms. Vaughn's father passed away in 1993. Ms. Vaughn became the Senior Pastor of the Holy Ghost Church. Over time, Ms. Vaughn created the five divisions of GTI as outreach ministries. The five divisions kept separate monetary accounts and forwarded funds to GTI to cover expenses. At all relevant times, GTI's officers were Ms. Vaughn, the President, CEO and Chief Apostle, Gilbert Vaughn, the Chief Financial Officer and Ruth Sinclair, the Comptroller . . .

In 1999, Ruth Adams ("Ms. Adams") was appointed as GTI's Fiscal Administrator. Prior to her appointment as Fiscal Administrator, Ms. Adams was a Trustee and Elder of the Holy Ghost Church. She was also involved in the accounting and financial duties of GTI as a volunteer. In 1999, Ms. Adams discovered there was a problem with payroll tax accounting and payments with respect to GTI. It became apparent that the hired employee responsible for payroll had not been remitting the proper amount of employment taxes to the United States. Ms. Adams made Ms. Vaughn aware that the employment taxes were not being paid. In response, Ms. Vaughn created the Fiscal Affairs Department and the Fiscal Administrator position. The Fiscal Affairs Department and the Fiscal Administrator consolidated the accounting and financial functions of the five different divisions under one department. Ms. Adams was to oversee the payroll and accounting functions of GTI and eventually pay off any outstanding tax liabilities. In 2000, GTI entered into a payment Plan with the IRS, regarding GTI's failure to remit employment taxes for the quarter ending March 31, 2002. These quarter payments were paid off in November 2002. Although, GTI paid off the amount owed for the quarter ending March 31, 2002, it failed to pay employment taxes for the second, third and fourth quarters of 2002 and the first and second quarter of 2003.

> The Form 941s[1] filed by Ms. Adams for the quarters ending June 30, 2002 through June 30, 2003 showed significant unpaid taxes and little to no payments for any of the quarters.
>
> Ms. Vaughn regularly traveled the country doing speaking engagements for GTI's outreach ministries. On January 6, 2003, Ms. Vaughn's husband became ill. In April, 2003, Ms. Vaughn and her husband moved to North Carolina. In May 2003, Ms. Vaughn resigned as Senior Pastor and began caring for her husband. Throughout this period, Ms. Vaughn remained the CEO and President of GTI.
>
> In June 2003, Ms. Vaughn returned to Michigan to deal with GTI's significant financial difficulties. During this visit, Ms. Vaughn sent an inter-office memorandum directing that "no disbursements to vendors or to staff are to be made until further notice except to Pastor Clifton Jefferson and myself, effective immediately." As a result, many of GTI's employees, including Ms. Adams resigned.

Bankruptcy Order, DE # 1-1, 1-4.

Before the bankruptcy court, appellants argued that Ms. Vaughn should have no personal responsibility for the claim because she was not a responsible person under 26 U.S.C. § 6672(a) and that even if Ms. Vaughn was found to be a responsible person under the statute, she did not act willfully. Additionally, appellants argued that the TFRP was improperly assessed against Ms. Vaughn because she was denied an administrative appeal of the IRS assessment.

The bankruptcy court conducted hearing on July 27, 2011, and telephonic hearing on October 17, 2011. Before the October 2011, hearing, the bankruptcy court requested and received additional documentation from the parties, including copy of the corporate bylaws of GTI Ministry Worldwide and The Holy Ghost Full Gospel Church as well as an invoice from appellee representing the taxes and penalties assessed against Ms. Vaughn as a responsible person of GTI. In order entered October 17, 2011, the bankrtupcy court overruled appellants' objections to the appellee's claim. The

---

[1] 1Trust fund taxes "are accounted for by the IRS on a quarterly basis through the use of a tax return form known as 'Form 941.' Employers must filed Form 941 within one month from the end of the prior quarter, and penalties are assessed for late filings." Farkas v. United States, 57 Fed. Cl. 134, 139 (2003).

bankruptcy court first concluded that Ms. Vaughn was a "responsible person" pursuant to 26 U.S.C. § 6672(a). The bankruptcy court considered the GTI bylaws in making its determination.

> The GTI Bylaws provide that the Chief Apostle shall act "as CEO over all spiritual and business matters." Additionally, the bylaws provide that the Chief Apostle shall be the "Chief Executive Officer of the said organization and shall be a continuing member of all boards and committees." The Chief Apostle "shall be an ex-officio member of all standing committees, and shall have the general powers and duties of supervision and management usually vested in the office of president of a corporation."

Bankruptcy Order, DE # 1-1, 3.[2] The bankruptcy court also considered other evidence in finding that Ms. Vaughn was a responsible person, including Ms. Vaughn's own testimony, statements of others, and Ms. Vaughn's actions as Chief Apostle of GTI. Appellants take issue with the bankruptcy court's interpretation of the GTI bylaws.

## DISCUSSION

A.  Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On an appeal [from the bankruptcy court] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy

---

[2] The bankruptcy court also analyzed the bylaws of the Holy Ghost Church, of which Ms. Vaughn was the senior pastor after her father passed away. As set forth above, the Holy Ghost Church was a division of GTI. Appellants do not raise specific issue regarding the bankruptcy court's consideration of the Holy Ghost Church bylaws.

4

court to judge the credibility of the witnesses.").

Appellants have the burden of disproving trust fund assessment liability by a preponderance of the evidence. In re Thorne, No. 09-04515-8-SWH, 2011 WL 1118487, at *2 (Bankr. E.D.N.C. Mar. 24, 2011). Generally, when the debtor has properly objected to the claimant's proof of claim, the claimant has the burden of proof pursuant to 11 U.S.C. § 502. Id. In a tax claim matter, however, "the taxpayer has the 'burden of proving the government's assessment wrong by a preponderance of the evidence.'" Id. (citing United States v. Pomponio, 635 F.2d 293, 297 n. 4 (4th Cir. 1980)).

Federal law requires employers to withhold federal income taxes and social security taxes from employee wages and remit those taxes to the United States. 26 U.S.C. §§ 3102, 3402, 7501. The employer holds these taxes in trust for the United States. See Slodov v. United States, 436 U.S. 238, 243 (1978). These taxes are often referred to as "trust fund taxes." Id. The United States has no recourse against individual employees. Therefore, an employer who fails to remit the withheld taxes to the United States, is liable for the taxes which should have been paid. 26 U.S.C. § 6672(a).

Section 6672(a) provides:

[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall . . . be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

Although the employer will remain liable for the unpaid payroll taxes, its officers and agents may incur personal liability for the unpaid payroll taxes. O'Connor v. United States, 956 F.2d 48, 50 (4th Cir. 1992). In order for an individual to be held personally liable under § 6672: "(1) the party

5

assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to as a 'responsible person'; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid." Id. at 50 (citing Pomponio, 635 F.2d at 295).

The question of who within the company is a "responsible person" required to collect, truthfully account for and pay the payroll taxes to the United States, is a "pragmatic, substance-over form inquiry into whether an officer or employee so 'participate[d] in decisions concerning payment of creditors and disbursement of funds' that he effectively had the authority-and hence a duty-to ensure payment of the corporation's payroll taxes." Plett v. United States, 185 F.3d 216, 219 (4th Cir. 1999) (citing, O'Connor, 956 F.2d at 51). In other words, the "crucial inquiry is whether the person had the effective power to pay the taxes-that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Id. (citation and internal quotation omitted).

When making the determination of who is a "responsible person", courts have considered several factors which are indicative of this authority including whether the employee: (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-today management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees. Plett, 185 F.3d at 219. No single factor is controlling or dispositive in the responsible person inquiry. See Erwin v. United States, 591 F.3d 313, 321 (4th Cir. 2010).

B.  Analysis

Appellants raise one argument on appeal, that the bankruptcy court should not have interpreted GTI's bylaws to determine whether Ms. Vaughn was a responsible person pursuant to 26 U.S.C. § 6672(a). Appellants do not object to the bankrtupcy court's factual findings, nor do they object to the bankruptcy court's determination that Ms. Vaughn acted willfully pursuant to § 6672(a). Appellants also do not object to the bankruptcy court's finding that appellee did not violate Ms. Vaughn's procedural rights.

The instant appeal is limited to a specific question of law, whether the bankruptcy court violated Ms. Vaughn's and GTI's rights under the free exercise clause and the establishment clause of the First Amendment in its analysis of whether or not Ms. Vaughn was a responsibile person within the meaning as set forth in 26 U.S.C. § 6672(a). Appellants argue that the bankruptcy court's decision effectively ordered GTI, a religious organization, to operate in a certain way.

The Free Exercise clause of the First Amendment, made applicable to the states through the Fourteenth amendment, provides that "Congress shall make not law . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168, 170 (4th Cir. 1995). The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. 1; Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools, 373 F.3d 589, 594 (4th Cir. 2004).

The Fourth Circuit has acknowledged that the civil courts of the United States are obliged to play a limited role at times in resolving church disputes, the limited role being premised on First Amendment principles that preclude a court from deciding issues of religious doctrine and practice, or from interfering with internal church government. Dixon v. Edwards, 290 F.3d 699, 714 (4th Cir.

7

2002). Civil courts lack any authority to resolve disputes arising under religious law and polity. Id. (citing Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich, 426 U.S. 696, 709 (1976)). First Amendment values are jeopardized when church litigation turns on the resolution by civil courts of controversies over religious doctrine and practice. Id. at 715. Civil courts must therefore avoid resolving underlying controversies over religious doctrine when deciding church property disputes. Id.; see also Presbyterian Church v. Hull Church, 393 U.S. 440, 449 (1969).

In assessing whether to exercise jurisdiction in a civil proceeding involving a church, the Fourth Circuit has held that it is important to determine whether the church is of a "hierarchical" nature. Dixon, 290 F.3d at 715. If the church is hierarchical, a civil court should defer to the final authority within its hierarchy, and must accept "the ecclesiastical decisions of church tribunals as it finds them . . . on matters of discipline, faith, internal organization, or ecclesiastical rule, custom or law." Milivojevich, 426 U.S. at 709-10.

Appellants argue that the bankruptcy court's analysis of Ms. Vaughn's role in GTI, specifically, the bankruptcy court's analysis of the GTI bylaws, effectively "establishes a state regulated religion through judicial fiat." (Appellants' Brief 7). In support of this claim, appellants cite case law, none of which is on point with the issues presented in the instant case. Minker v. Baltimore Annual Conference of United Methodist Church, 894 F.2d 1354, 1356-57 (D.C. Cir. 1990) and Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168 (4th Cir. 1985) address the hiring of religious leaders, an issue not presented in the instant appeal. Similarly, N.L.R.B. v. Catholic Bishop of Chicago, 440 U.S. 490 (1979), involved considerations of government interference with religious schools, particularly in considerations of hiring practices and decision making. 440 U.S. at 502.

Appellants argue that by citing the GTI bylaws, the bankruptcy court is effectively ordering what the President, CEO and Chief Apostle of GTI must do. Even assuming that GTI was hierarchical, appellants do not show how mere citation of the bylaws in the bankruptcy court's order is a challenge to the ecclesiastical decisions or religious customs of GTI in violation of the free exercise or free establishment clauses. In its most favorable light, appellants ask the court to make the logical leap to hold that the mere citation of the church bylaws as part of the responsible person analysis under 26 U.S.C. § 6672 is prohibited by the First Amendment. The case law, while limited in this specific context, does not appear to support appellants' argument. See In re Tripplett, 115 B.R. 955, 957 (Bankr. N.D. Ill. 1990) (engaging in similar inquiry as the bankruptcy court did here, yet finding that an individual holding the position of church treasurer and financial secretary was not a responsible person under § 6672(a)).

In addition to the lack of support for appellants' First Amendment argument, the bankruptcy court's analysis of the responsible person standard is much broader than appellants suggest. The bankruptcy court focused its analysis on many factors, including Ms. Vaughn's testimony, the GTI bylaws, Ms. Vaughn's actual behavior, and Ms. Adams' testimony. Bankruptcy Order, DE # 1-1, 9-13. The bankruptcy court placed particular emphasis on Ms. Vaughn's actions, including co-signing loans, signing checks on behalf of the corporation, and hiring and firing employees, evidence of what she had actual authority to do. Id. at 12.

Notably, the bankruptcy court's analysis of the GTI bylaws was limited to a few paragraphs in the order overruling appellants' claim objection. Bankruptcy Order, DE # 1-1, 9. The bankruptcy court noted that the bylaws provide that the Chief Apostle shall be the CEO of GTI and a member of all boards and committees and that the Chief Apostle shall execute in the name of GTI deeds,

9

bonds, mortgages, contracts and other documents, and have the powers and duties of supervision and management usually vested in the office of president of a corporation. Appellants' Brief, Ex. 4. The bankruptcy court interpreted the bylaws as authorizing the Chief Apostle to have decision making authority and supervision over business matters. Bankruptcy Order, DE # 1-1, 9. Appellants argue that this interpretation now forces the Chief Apostle of GTI to concern herself with secular affairs. Putting aside the fact that the plain language of the bylaws suggests that the Chief Apostle does concern herself with such affairs, the bankruptcy court did not base its decision on the bylaws alone. Contrarily, close examination of the bankruptcy court's order reveals that it placed great emphasis on what Ms. Vaughn actually *did* as the Chief Apostle of GTI, including co-signing a $178,000.00 construction loan on behalf of GTI, disbursing and withholding payments to vendors and staff, signing a corporate resolution authorizing a bank account with First Federal Bank of Michigan which authorized Ms. Vaughn to sign checks on behalf of GTI, and hiring and firing employees. Bankruptcy Order, DE # 1-1, 9-13.

Appellants do not contest the bankruptcy court's consideration of Ms. Vaughn's actions, nor do they contest the documentary evidence showing that she was a responsible person with authority, a person required to collect, truthfully account for, and pay over GTI's taxes. While appellants argue that the bankruptcy court impermissibly interpreted the GTI bylaws in such a way as to infringe upon appellants' First Amendment rights, the court finds no support in the case law that the bankruptcy court's findings or analysis did anything of the kind. As set forth above, appellants' First Amendment argument is not supported by the case law appellants cite, especially in light of the bankruptcy court's consideration of several other significant factors in its analysis finding Ms. Vaughn to be a responsible person.

With no other grounds for appeal presented for this court's consideration, the bankruptcy court's order overruling appellants' claim objection is affirmed.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the bankruptcy court's order overruling appellants' objection to claim. The Clerk is directed to close this case.

SO ORDERED, this the 16th day of July, 2012.

LOUISE W. FLANAGAN
United States District Judge